1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

GENEVIEVE MEYER,                                    No. C 10-05858 CRB

12

      Plaintiff,                                **MEMORANDUM AND ORDER**
                                                        **GRANTING MOTION TO COMPEL**
13                                                       **ARBITRATION AND STAYING CASE**

  v.

14

T-MOBILE USA INC.,

15

      Defendant.

                             /

16

17       Plaintiff Genevieve Meyer has brought a putative class action against T-Mobile USA,

18 Inc. ("T-Mobile"), alleging four causes of action relating to T-Mobile's assessment of state

19 and federal surcharges on its bills to subscribers for mobile telephone services.  See generally

20 Rivas Decl. (dkt. 20-1) Ex. A ("Complaint").

21       Now pending is T-Mobile's Motion to Compel Arbitration and Stay the Case.  See

22 generally Mot. (dkt. 16).  T-Mobile argues that Plaintiff is bound to an arbitration agreement,

23 including class action waiver, included in the Terms and Conditions ("T&C") of the Service

24 Agreement Plaintiff signed when she purchased and renewed her T-Mobile phone service.

25 See Mot. (dkt. 16) at 2.

26       Because Plaintiff's claims are covered by the arbitration agreement and the arbitration

27 agreement is valid and enforceable, the Motion to Compel Arbitration is GRANTED, and the

28 case is STAYED.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

## I.    BACKGROUND

In 1996, Congress passed the Telecommunications Act, requiring telecommunications companies such as T-Mobile to contribute to a federal Universal Service Fund ("Fed-USF") to facilitate universal telecommunications service.  Rivas Decl. (dkt. 20-1) Ex. A ("Complaint") ¶ 3.  A company's required contribution to Fed-USF is calculated according to the company's interstate and international telecommunications revenues, and the company may lawfully pass along to its subscribers the costs of fulfilling its required contribution.  Id. ¶ 3.

California also has a Universal Service program ("Cal-USF") to which telecommunications companies must contribute.  Id. ¶ 5.  A company's required contribution to Cal-USF is calculated according to the company's intrastate revenues.  Id.  A company may lawfully pass along to its subscribers the costs of fulfilling its required contribution, but the company's calculation of its state contribution cannot be based on its interstate or international telecommunications revenues.  Id.

Plaintiff Genevieve Meyer purchased two lines of service and phones from T-Mobile on June 27, 2004.  See generally Baca Decl. (dkt. 17) Ex. A ("2004 Service Agreement").  Thereafter, Plaintiff renewed and extended her T-Mobile service three times: on June 28, 2007, January 5, 2008, and, most recently, August 1, 2008.  Baca Decl. (dkt. 17) ¶ 5.

Plaintiff claims that, during her service contract, T-Mobile assessed "Cal-USF fees based on the aggregate calculation of intrastate, interstate, and international telecommunications services, rather than on intrastate services alone.  T-Mobile's practice of including interstate and international revenues in the calculation of Cal-USF fees artificially and unlawfully inflates the five Cal-USF charges on its subscribers' phone bills."  Rivas Decl. (dkt. 20-1) Ex. A ("Complaint") ¶ 6.  Based on T-Mobile's alleged misconduct, Plaintiff has brought a putative class action on behalf of herself and those similarly situated.  Id. ¶ 1.  Plaintiff alleges four causes of action: (1) violation of the Federal Communications Act ("FCA"); (2) violation of California's Unfair Competition Law ("UCL"); (3) fraudulent

concealment; and (4) violation of the Consumers Legal Remedies Act ("CLRA").  <u>See</u>

<u>generally</u> <u>id.</u>

T-Mobile argues that Plaintiff is bound to the arbitration agreement, including class

action waiver, contained in the T&C of the Service Agreement Plaintiff signed when she

purchased and renewed her T-Mobile phone service.  <u>See</u> Mot. (dkt. 16) at 2.  Plaintiff argues

that the arbitration agreement is unenforceable for the following reasons:

(1)   T-Mobile agreed that any provision in the Service Agreement rendered invalid
under California law would be unenforceable, and the class action waiver was
invalid under California law at the time Plaintiff entered the agreement in
August 2008;

(2)   the arbitration agreement is unconscionable; and

(3)   the arbitration agreement would prevent Plaintiff from vindicating her statutory
rights.  <u>See</u> <u>generally</u> Opp'n (dkt. 20).

If the Court does not find the arbitration agreement unenforceable based on Plaintiff's

arguments and available evidence, Plaintiff requests to conduct limited discovery on the issue

of whether the arbitration agreement is valid.[1]  <u>Id.</u> at 17.

## II.    LEGAL STANDARD

The Federal Arbitration Act (FAA) provides that an agreement to submit commercial

disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds

as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Congress's

purpose in passing the Act was to put arbitration agreements "upon the same footing as other

contracts," thereby "reversing centuries of judicial hostility to arbitration agreements" and

allowing the parties to avoid "the costliness and delays of litigation."  <u>Scherk v. Alberto-</u>

---

[1] On the eve of the hearing, Plaintiff filed a Request for Judicial Notice of cases brought by T-Mobile alleging trade infringement and/or computer hacking.  <u>See</u> <u>generally</u> Request.  Local Civil Procedure Rule 7-3(d), however, prohibits "additional memoranda, papers, or letters" to be filed after a reply has been filed, unless (1) new evidence has been submitted in the reply and the additional memoranda, paper or letter states a party's objections to the new evidence, or (2) the additional memoranda, paper or letter is "a relevant judicial opinion [that was] published after the date the opposition or reply was filed."  Civ. L.R. 7-3(d).  As neither of the exceptions to Local Rule 7-3(d) apply, Plaintiff's Request is improperly filed.  Even if Plaintiff's Request were properly filed, the materials Plaintiff submits regarding alleged trade infringement and computer hacking by parties who were not legitimate T-Mobile customers are irrelevant to the disposition of the pending Motion.

United States District Court
For the Northern District of California

Culver Co., 417 U.S. 506, 510-11 (1974) (quoting H. R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)).

In applying the Act, courts have developed a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25 (1983).  The Supreme Court has emphasized that courts should refer a matter for arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960).  "In the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Id. at 584-85. Thus, any doubt about the applicability of an arbitration clause must be "resolved in favor of arbitration." Id. at 589.

At the same time, however, the Supreme Court has repeatedly emphasized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Tech. Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers, 363 U.S. at 582).  Thus, a federal court's task in reviewing the arbitrability of a particular dispute is to determine whether the parties have agreed to submit that dispute to arbitration.

"The standard for demonstrating arbitrability is not high." Simula, Inc. v. Autoliv, Inc., 175 F.3d 717, 719 (9th Cir. 1999).  "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds v. Byrd, 470 U.S. 213 (1985) (citing §§ 3 and 4 of the FAA) (emphasis in original).

The final phrase of § 2 of the FAA provides that arbitration agreements are to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Thus, in addition to determining the arbitrability of a dispute, courts should determine the enforceability of the arbitration agreement.  Grounds for

4

**United States District Court**
For the Northern District of California

declaring an arbitration agreement unenforceable are determined by "ordinary state-law principles that govern the formation of contracts." Circuit City, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 81 (2000).

## III.   DISCUSSION

### A.   Plaintiff's Claims Are Covered By the Arbitration Agreement

Plaintiff's claims are covered by the arbitration agreement.[2]

The **arbitration agreement** contained in the T&C states in relevant part:

> **WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW . . . ANY AND ALL CLAIMS OR DISPUTES BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT.**

See Baca Decl. (dkt. 17) Ex. D ("2008 T&C") ¶ 2 (emphasis in original).

The arbitration agreement also contains a **class action waiver**, which states in part:

> **WE EACH AGREE THAT ANY DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A MEMBER IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION.**

---

[2]   Indeed, Plaintiff does not even contest this issue. See generally Opp'n (dkt. 20).

United States District Court
For the Northern District of California

1  Id. (emphasis in original).[3]  All of Plaintiff's causes of action – (1) violation of the FCA; (2)

2  violation of the UCL; (3) fraudulent concealment; and (4) violation of the CLRA – arise from

3  T-Mobile's alleged misconduct in assessing surcharges on its bills, and thus are billing

4  disputes covered by the arbitration agreement.  Because the class action waiver broadly

5  covers "any dispute resolution proceedings, whether in arbitration or court," it applies to all

6  of Plaintiff's claims in this case.  Thus, Plaintiff's claims are subject to arbitration unless the

7  arbitration agreement is unenforceable.

**B.    The Arbitration Agreement Is Valid and Enforceable**

**1.    The Arbitration Agreement Is Not Governed Only By California Law**

Plaintiff argues that "T-Mobile voluntarily and privately agreed to limit the

application of the Agreement's terms, including the arbitration clause, if any of the terms

were invalid under the law of a particular jurisdiction."  Opp'n (dkt. 20) at 6 (citing Baca

Decl. (dkt. 17) Ex. D ("2008 T&C") ¶ 25).  Citing the CLRA[4] and Discover Bank v. Superior

---

[3]  T-Mobile has attached as exhibits its 2004 Service Agreement, T&C and arbitration agreement with Plaintiff, as well as their 2008 Service Agreement, T&C and arbitration agreement.  See generally Baca Decl. (dkt. 17).  "T-Mobile's Terms and Conditions have changed somewhat over the years, but all of the versions in effect during Ms. Meyer's tenure as a T-Mobile subscriber have contained an arbitration agreement and class action waiver."  Id. ¶ 8

Notwithstanding the modifications over the years, T-Mobile states that, "[b]ased on the most recent renewal of Ms. Meyer's T-Mobile service and contract, the June 28, 2008 version of the Terms & Conditions applies to her account."  Id.  Plaintiff also relies exclusively on the 2008 Service Agreement, T&C and arbitration agreement in challenging the validity of the arbitration agreement.  See generally Opp'n.  As the only arbitration agreement at issue is the 2008 agreement, this order is based on the 2008 Service Agreement, T&C and arbitration agreement, unless otherwise specified.

[4] Section 1751 of the CLRA renders as "unenforceable and void" any waiver of statutory rights, including the right to bring class actions, provided for under the CLRA.  See Cal. Civ. Code § 1751, 1781(a).

6

**United States District Court**
For the Northern District of California

Court[5], Plaintiff argues that the class action waiver in the arbitration agreement was invalid under California law in August 2008 and thus is unenforceable now. Id.

Plaintiff's argument is flawed both factually and legally. First, the arbitration agreement is not governed only by California law. See Baca Decl. (dkt. 17) Ex. D ("2008 T&C") ¶ 25 ("This Agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state in which your billing address in our records is located."). Second, Plaintiff's citations to the CLRA and Discover Bank are misplaced, as the FAA preempts both. See Ting v. AT&T, 319 F.3d 1126, 1147 (9th Cir. 2003) (holding that the FAA preempts section 1751 of the CLRA prohibiting class action waivers); AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1753 (2011) (holding that the FAA preempts the Discover Bank rule). Although the Supreme Court decided Concepcion after Plaintiff entered the 2008 Service Agreement, this Court must nonetheless apply Concepcion to its review of the agreement. See Ditto v. McCurdy, 510 F.3d 1070, 1076-77 (9th Cir. 2007) (holding that an intervening Supreme Court decision "must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate . . . announcement of the rule"). Considering the language of the Service Agreement and the federal and state law governing it, the arbitration agreement's class action waiver is valid.

## 2. The Arbitration Agreement Is Not Unconscionable

Under California law, an arbitration agreement is unenforceable if it is both procedurally and substantively unconscionable. See Davis v. O'Melveny & Meyers, 485 F.3d 1066, 1072 (9th Cir. 2007). Courts use a sliding scale under which the more procedural

---

[5]  Discover Bank held that a class action waiver is unconscionable where "the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." Discover Bank v. Superior Court, 36 Cal. 4th 148, 162-63 (2005).

1    unconscionability there is, the less substantive unconscionability is required, and vice versa.

2    See Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000).

### I.   The Arbitration Agreement Is Not Procedurally Unconscionable

The analysis for procedural unconscionability focuses on oppression or surprise.  See id. "Procedural unconscionability addresses the manner in which agreement to the disputed term was sought or obtained, such as unequal bargaining power between the parties and hidden terms included in contracts of adhesion."  Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 1099 (2002).  A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it" and with no opportunity to negotiate. Armendariz, 24 Cal. 4th at 113-15.  There is no contract of adhesion, however, if the contract provides a meaningful opportunity to opt-out of arbitration.  Circuit City Stores, Inc. v. Ahmed, 283 F.3d 1198, 1199 (9th Cir. 2002) (finding no procedural unconscionability where plaintiff was given thirty days to decide whether to participate in the arbitration program and mail a simple form to opt-out, and the arbitration agreement did not contain any other indicia of procedural unconscionability).

The Service Agreement contains some characteristics of a contract of adhesion: it is a standardized contract drafted by T-Mobile, the party with superior bargaining strength.  See Opp'n (dkt. 20) at 8.  However, the Service Agreement did not relegate Plaintiff only to the opportunity to accept the arbitration agreement or reject T-Mobile's phone service. Instead, the agreement contains an **opt-out provision**, which states in relevant part:

> **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION** if: (a) your claim qualifies, you may initiate proceedings in small claims court; or (b) **YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE DATE YOU ACTIVATED THAT PARTICULAR LINE OF SERVICE (the "Opt Out Deadline").** You may opt out of these arbitration procedures by calling 1-866-323-4405 or via the internet by completing the opt-out form located on **www.t-mobiledisputeresolution.com. Any opt-out received after the Opt Out Deadline will not be valid and you must pursue your claim in arbitration or small claims court.**

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Baca Decl. (dkt. 17) Ex. D ("2008 T&C") ¶ 2 (emphasis in original).[6]  Plaintiff thus had thirty days to decide whether to opt out of the arbitration agreement and had the option to do so either by phone or internet.  Further, the opt-out provision does not describe any adverse consequences of opting out of arbitration, and Plaintiff does not allege that she would have suffered any.  See Opp'n (dkt. 20) at 10.  Moreover, Plaintiff was informed of the legal consequences of failing to opt out.[7]  See Baca Decl. (dkt. 17) Ex. D ("2008 T&C") ¶ 2.

Neither the opt-out provision nor the arbitration agreement was a hidden term.  The arbitration agreement is located in the second numbered paragraph of the T&C of the Service Agreement and is written in capitalized and bolded letters.  See id.  The opt-out provision immediately follows the arbitration agreement in the second numbered paragraph of the T&C and is also written in capitalized and bolded letters.  Id.  Finally, the class action waiver is also located in the second numbered paragraph of the T&C, written in capitalized and bolded letters, and contains the heading "**CLASS ACTION WAIVER**."  Id. ¶ 3 (emphasis in original).  T-Mobile's T&C are also included in a pamphlet packaged in the boxes of all phones sold by T-Mobile, see Baca Decl. (dkt. 17) ¶ 9, and although Plaintiff does not recall a pamphlet being included in her phone box, see Meyer Decl. (dkt. 20-17) ¶ 7, she does not provide any information countering T-Mobile's showing.  Because the arbitration agreement contains an opt-out provision and is presented in a clear format, the arbitration agreement is not procedurally unconscionable.  See Arellano v. T-Mobile USA, Inc., No. C 10–05663 WHA, 2011 WL 1362165, at *1-2 (N.D. Cal. Apr. 11, 2011) (finding no procedural

---

[6]  Although the 2008 T&C contains an opt-out provision, there is no opt-out provision in the 2004 Service Agreement or T&C.  See Baca Decl. (dkt. 17) Ex. A ("2004 Service Agreement") ¶ 3; id. Ex. B ("2004 T&C") ¶ 3.

[7] The arbitration agreement states in pertinent part:

THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).  Baca Decl. (dkt. 17) Ex. D ("2008 T&C") ¶ 2.

**United States District Court**
For the Northern District of California

unconscionability for a T-Mobile arbitration agreement that very closely resembles the one in this case).

### ii. The Arbitration Agreement Contains Some Elements of Substantive Unconscionability

The analysis for substantive unconscionability focuses on an arbitration agreement's overly harsh or one-sided results.  See Armendariz 24 Cal. 4th at 114.  Courts require arbitration agreements to contain a "modicum of bilaterality."  Id. at 117.  There is no bilaterality if the arbitration agreement "compels arbitration of the claims more likely to be brought by the weaker party but exempts from arbitration the types of claims that are more likely to be brought by the stronger party."  Fitz v. NCR Corp., 118 Cal. App. 4th 702, 724 (2004) (citing Armendariz, 24 Cal. 4th at 119).  Arbitration agreements limiting the amount of damages that would otherwise be available in court are also substantively unconscionable. See Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1179 (9th Cir. 2003).  To determine whether the arbitration agreement is sufficiently bilateral, courts should "look beyond facial neutrality and examine the actual effects of the challenged provision."  Ting, 319 F.3d at 1149.

The arbitration agreement provides for neutral arbitration.  See Baca Decl. (dkt. 17) Ex. D ("2008 T&C") ¶ 2 ("The American Arbitration Association (AAA) will arbitrate all disputes.").  Parties in arbitration can receive the same damages that would otherwise be available in court.  Id. ("An arbitrator may award on an individual basis any relief that would be available in a court, including injunctive or declaratory relief and attorneys' fees.").  Plaintiff also does not have to pay arbitrators' fees for claims under $75,000.  Id. ("We [T-Mobile] will pay upon filing of the arbitration demand, all filing, administration and arbitrator fees for claims that total less than $75,000.").  Plaintiff argues that T-Mobile's unilateral power to modify the agreement is unconscionable, see Opp'n (dkt. 20) at 13, but Plaintiff has not shown how the modification clause has been applied to her.  Plaintiff thus lacks standing to challenge the provision.  See Lee v. Am. Express Travel Related Servs., Inc., 348 Fed. Appx. 205, 207 (9th Cir. 2009) ("Plaintiffs cannot satisfy the requirements of

Article III because they have not yet been injured by the mere inclusion of these provisions, nor is the threat of future harm from such provisions sufficiently imminent to confer standing.").

Notwithstanding some of the bilateral terms in the arbitration agreement, the agreement contains some elements of substantive unconscionability.  The arbitration agreement allows T-Mobile to assign outstanding bills to collection agencies that can then pursue the claims against customers in court, but the agreement does not provide customers with the same unequivocal power (customers must opt out of arbitration).[8]  Assuming T-Mobile invoked this right in the face of a claim by a customer that the past due amount was wrongly charged, the agreement would compel the customer, the weaker party, to arbitration while exempting T-Mobile, the stronger party, from arbitration.  This provision makes the arbitration agreement substantively unconscionable as to this aspect of the agreement, but as there is no procedural unconscionability, the arbitration agreement is not unconscionable on the whole.  See Gatton v. T-Mobile, USA, Inc., 152 Cal. App. 4th 571, 599 (2007) ("Because there is an absence on this record of both the surprise and oppression factors of procedural unconscionability, the service agreement is not unconscionable, and T–Mobile's motion to compel arbitration should be granted.").

### 3.    Plaintiff's Statutory Claims Are Arbitrable

### I.      Plaintiff's Federal Statutory Claim Is Arbitrable

"Contractual arbitration agreements are equally applicable to statutory claims as to other types of common law claims."  Lozano v. AT & T Wireless Services, Inc., 504 F.3d 718, 725 (9th Cir. 2007).  Indeed, absent "fraud or overwhelming economic power that

---

[8] The arbitration agreement states in relevant part:

> **We each agree that** if you fail to timely pay amounts due, we may assign your account for collection, and the collection agency may pursue in court claims limited strictly to the collection of the past due amounts and any interest or cost of collection permitted by law or the Agreement.

Baca Decl. (dkt. 17) Ex. D ("2008 T&C") ¶ 2 (emphasis in original).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

would provide grounds 'for the revocation of any contract,'" the FAA "provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 627 (1985) (internal citation omitted).

Agreements subjecting federal statutory claims to arbitration must be enforced "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." <u>Mitsubishi Motors Corp.</u>, 473 U.S. at 628.  "If such an intention exists, it will be discoverable in the text of the . . . [statute], its legislative history, or an 'inherent conflict' between arbitration and the . . . [statute's] underlying purposes." <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 26 (1991) (internal citation omitted).  The burden to show such Congressional intent is on the party opposing arbitration.  <u>See</u> <u>Lozano</u> 504 F.3d at 725-26 (internal citation omitted).

Plaintiff has not shown how the text of the FCA or its legislative history evinces a Congressional intent to preclude arbitration of Plaintiff's FCA claim.  To the extent Plaintiff argues that there is an inherent conflict between arbitration and the FCA's underlying purpose, her argument has been foreclosed by <u>Lozano</u>, in which the Ninth Circuit ruled that claims under the FCA may be subject to mandatory arbitration.  <u>See</u> <u>Lozano</u> 504 F.3d at 726-27 ("Neither the public policy considerations in the FCA, nor the inequality of bargaining power between the parties, is sufficient to show congressional intent to preclude arbitration.").  Thus, Plaintiff's claim under the FCA is arbitrable.

## ii.    Plaintiff's State Statutory Claims Are Arbitrable

Plaintiff argues that the arbitration agreement is unenforceable because it would deny her from exercising her statutory right to seek injunctive relief under the UCL and CLRA, rights affirmed by the California Supreme Court.  <u>See</u> Opp'n (dkt. 20) at 16 (citing <u>Broughton v. Cigna Healthplans of Cal.</u>, 21 Cal. 4th 1066 (1999) and <u>Cruz v. PacifiCare</u>

United States District Court
For the Northern District of California

1    Health Systems, Inc., 30 Cal. 4th 303 (2003)).[9]  Broughton held that public injunctive relief

2    claims under the CLRA are inarbitrable, see Broughton, 21 Cal. 4th at 1080, 1082 (holding

3    such claims inarbitrable because the purpose of such relief is to "remedy a public wrong,"

4    and "the judicial forum has significant institutional advantages over arbitration in

5    administering a public injunctive remedy, which as a consequence will likely lead to the

6    diminution or frustration of the public benefit if the remedy is entrusted to arbitrators").  Cruz

7    held that public injunctive relief claims brought under the UCL and FAL are also

8    inarbitrable, see Cruz, 30 Cal. 4th at 316.

9         Concepcion holds that the FAA preempts state law to the extent the state law would

10    preclude "enforcement of arbitration agreements according to their terms so as to create

11    streamlined proceedings," even if the state law is based on public policy.  Concepcion, 131 S.

12    Ct. at 1748.  The effect of Concepcion on California's law prohibiting arbitration of public

13    injunctive relief claims was recently addressed by a court in this district, which concluded the

14    FAA preempts California's law.  See Arellano v. T-Mobile USA, Inc., No. C 10–05663

15    WHA, 2011 WL 1842712, at *1 (N.D. Cal. May 16, 2011).

16        Arellano involved facts and issues very similar to this case: plaintiff brought a class

17    action against T-Mobile, seeking injunctive relief, among other remedies, for claims brought

18    under the CLRA and UCL.  See Arellano, 2011 WL 1842712, at *1.  T-Mobile argued that

19    the claims should be arbitrated based on the parties' arbitration agreement, which very

20    closely resembled the one in this case.  See Arellano, 2011 WL 1362165, at *1.  Plaintiff

21    made several public policy arguments for why the CLRA and UCL claims were inarbitrable.

22    See Arellano, 2011 WL 1842712, at *2.  Judge Alsup, however, ruled that the FAA

23    "preempts California's preclusion of public injunctive relief claims from arbitration, at least

24    for actions in federal court."  Id., at *1 ("The recent Concepcion decision compels

25    preemption: 'When state law prohibits outright the arbitration of a particular type of claim,

26

27    _____

28        [9]  Plaintiff has filed a statement of recent decision pursuant to L.R. 7-3(d) as well.  The Court
     has considered these authorities, but finds they do not alter its conclusions, for the reasons discussed in
     more detail below.

the analysis is straightforward: The conflicting rule is displaced by the FAA.'" (citing Concepcion, 131 S. Ct. at 1747)).

Plaintiff in this case makes the same public policy arguments as plaintiff in Arellano for why her CLRA and UCL claims are inarbitrable.  See Opp'n (dkt. 20) at 13-17 ("if arbitration is compelled, the claims of Plaintiff and other T-Mobile customers are almost certain to go unresolved.").  However, both Arellano and Concepcion rejected this argument.  See Concepcion, 131 S. Ct. at 1753 ("The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system . . . But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.").

Several other courts have also held that the FAA preempts Broughton and Cruz because they amount to "state law[s] prohibit[ing] outright the arbitration of a particular type of claim."  See Nelson v. AT&T Mobility LLC, No. 10-4802, 2011 WL 3651153, at *2 (N.D. Cal. Aug. 18, 2011); In re Apple and AT&T iPad Unlimited Data Plan Litigation, No. 10-2553, 2011 WL 2886407, at *4 (N.D. Cal. July 19, 2011); Kaltwasser v. AT&T Mobility LLC, No. 07-411, (N.D. Cal. Sept. 20, 2011) (all quoting Concepcion, 131 S. Ct. at 1747).

The Court is aware that one district court came to the opposite conclusion.  In In re DirecTV Early Cancellation Fee Marketing and Sales Practices Litigation, the Court held Concepcion did not overrule Cruz and Broughton.  — F. Supp. 2d —, No. 09-2093, 2011 WL 4090774, at *9-10 (C.D. Cal. Sept. 6, 2011).  There, the Court found that Cruz and Broughton were not an "outright" prohibition of certain claims, but rather, that arbitration was improper for only certain categories of injunctive claims – namely, those brought when a plaintiff is acting as a private attorney general and seeking an injunction to vindicate a public right.  Id. at *10.  While the Court does raise compelling policy arguments to support this conclusion, see id. (discussing the benefits of a judicial forum for such actions in comparison to an arbitral forum), this Court finds this no longer tenable post-Concepcion.

14

Concepcion held that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." 131 S. Ct. 1747.  The Central District is correct that Cruz and Broughton do not prohibit outright the arbitration of all injunctive relief claims under the CLRA and UCL, but they do prohibit outright the arbitration of all injunctive relief claims brought in the capacity of a private attorney general that seek a public injunction.  While this is a more narrow "particular type of claim," it is still a state court application of public policy to prohibit an entire category of claims.  This Court does not disagree with the Central District that public policy supporting such a prohibition may be compelling, but such a prohibition does not survive Concepcion.  Thus, Plaintiff's claims under the CLRA and UCL are arbitrable.

## C.   Plaintiff Is Not Entitled to Arbitration-Related Discovery

If the Court does not find the arbitration agreement unenforceable based on the present record, Plaintiff requests to conduct limited discovery on the issue of whether the arbitration agreement is valid.  Opp'n (dkt. 20) at 17.  For reasons discussed below, Plaintiff's proposed discovery requests are beyond the scope allowed by the FAA and are denied.

The FAA "calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses."  Moses H. Cone Mem'l Hosp., 460 U.S. at 29.  "It was 'Congress's clear intent, in the [FAA], to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'"  Bell v. Koch Foods of Miss., LLC, 358 Fed. Appx. 498, 500-01 (5th Cir. 2009) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 22).  As part of the FAA's strong policy favoring arbitration, the statute "provides for discovery and a full trial in connection with a motion to compel arbitration only if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'"  Simula, Inc., 175 F.3d at 726 (quoting 9 U.S.C. § 4).  Courts may only consider "issues relating to the making and performance of the agreement to arbitrate."  Id. at 726.  District courts in the Ninth Circuit and the Ninth Circuit itself have allowed a party

United States District Court
For the Northern District of California

1    opposing a motion to compel arbitration to conduct discovery relevant to the issue of

2    unconscionability.  See Hoffman v. Citibank (South Dakota), N.A., 546 F.3d 1078, 1085 (9th

3    Cir. 2008) (remanding case to district court to expand the record on the issue of procedural

4    unconscionability); see also Coneff v. AT&T Corp., No. C06–0944RSM, 2007 U.S. Dist.

5    LEXIS 20502, at *8-10 (W.D. Wash. Mar. 9, 2007) (allowing discovery requests related to

6    the issue of unconscionability but not the merits of the parties' underlying dispute); Hamby

7    v. Power Toyota Irvine, No. 11cv544-BTM (BGS), 2011 WL 2852279, at *1 (S.D. Cal. July

8    18, 2011) (citing Coneff in granting plaintiff's ex parte application for arbitration-related

9    discovery).

10          Most of Plaintiff's discovery requests do not relate to the validity of Plaintiff's

11   arbitration agreement with T-Mobile.  Instead, they concern all agreements, disputes,

12   arbitrations and lawsuits relating to T-Mobile customers in California other than Plaintiff for

13   the entire seven-year "relevant time period."  See id. Ex. G ("First Set of Requests to Produce

14   Documents")  ¶ 9 (requesting "DOCUMENTS showing the highest, median, and mean

15   monetary awards in arbitrations involving T-MOBILE and CUSTOMERS during the

16   RELEVANT TIME PERIOD."); id. ¶ 11 (requesting "DOCUMENTS showing the amounts

17   paid to CUSTOMERS or the outcomes of all lawsuits filed against T-MOBILE in any small

18   claims, state or federal court during the RELEVANT TIME PERIOD.").  Plaintiff's

19   remaining discovery requests concern T-Mobile's past T&C and arbitration procedures.  See

20   id. ¶ 2 ("All DOCUMENTS RELATING TO ARBITRATION PROCEDURES, including

21   without limitation all originals and revisions that were in effect during the RELEVANT

22   TIME PERIOD."); id. ¶ 3 ("The TERMS AND CONDITIONS used by T-MOBILE,

23   including all originals and revisions that were in effect during the RELEVANT TIME

24   PERIOD.").  However, the only arbitration agreement at issue is the 2008 agreement, and the

25   documents relevant to determining the validity of that arbitration agreement – the 2008

26   Service Agreement, T&C and arbitration agreement – are already accessible by the parties

27   and the Court.  See Baca Decl. (dkt. 17) Ex. C ("2008 Service Agreement"); id. Ex. D ("2008

28   T&C"); Rivas Decl. (dkt. 20-1) Ex. J ("AAA Supplementary Procedures for Consumer-

16

1   Related Disputes").  Because Plaintiff's proposed discovery requests are either overly broad

2   or irrelevant to the disposition of the pending Motion, Plaintiff is not entitled to discovery.

3   **III.    CONCLUSION**

4           For the foregoing reasons, T-Mobile's Motion to Compel Arbitration is GRANTED,

5   and the case is STAYED.

6           **IT IS SO ORDERED.**

7

8



9   Dated: September 23, 2011                    CHARLES  R. BREYER

10                                              UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California